# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:20-CV-00568-DSC

| | |
|---|---|
| **XPRESS GROUP INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **MEMORANDUM AND ORDER** |
| **KENNETH T. CUCCINELLI, in his official capacity as Senior Official performing duties of the Director of USCIS,** | ) ) ) ) ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on "Plaintiff's Motion for Summary Judgment and Memorandum of Points and Authorities," Doc. 18, and Defendant's "Opposition to Plaintiff's Motion for Summary Judgment [and Motion for Summary Judgment]," Doc. 19, as well as the parties' briefs and the Certified Administrative Record ("CAR"), Doc. 17.

The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and these Motions are ripe for disposition.

## I. INTRODUCTION

Plaintiff Xpress Group, Inc. argues that Defendant U.S. Citizenship and Immigration Services ("USCIS") improperly denied H-1B status for its beneficiary Mohammad Nassar. Specifically, Plaintiff argues that Defendant improperly determined that the position Nassar would have filled as a Management Analyst does not qualify as a specialty occupation for a H-1B visa. Defendant responds that USCIS thoroughly considered all evidence Plaintiff submitted and provided sufficient reasoning to support its

conclusions that the proffered job does not meet the statutory and regulatory criteria for a "specialty occupation" and properly denied the H-1B visa Petition.

Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff's H-1B Petition was not arbitrary and capricious and is supported by substantial evidence. Accordingly, the Court will <u>deny</u> Plaintiff's Motion for Summary Judgment; <u>grant</u> Defendant's Motion for Summary Judgment; and <u>affirm</u> the USCIS decision.

## II. <u>PROCEDURAL HISTORY</u>

Plaintiff is a management company located in Charlotte, North Carolina. It oversees three different business models that provide automotive services in North and South Carolina. It has a total of eleven physical locations and twelve different businesses. The businesses include seven full-service oil change and preventative maintenance centers, three car washes, and two fuel and convenience stores. Doc. 12. On April 11, 2019, Plaintiff filed a Form I-129 Petition for Nonimmigrant Worker, seeking H-1B classification for the "Management Analyst" position to be filled by Mohammad Nasser. CAR pp. 25-37.

On December 2, 2019, after review of the Petition and accompanying material, USCIS issued a Request For Evidence (the "First RFE"), affording Plaintiff an opportunity to supplement its prior submissions in specific areas. CAR pp. 125-132. On January 10, 2020, Plaintiff responded with additional evidence. CAR pp. 141-239. On January 28, 2020, USCIS denied the Petition, explaining that the agency had examined all the evidence and determined that Plaintiff failed to meet its burden to demonstrate that the position offered to Nassar satisfied the criteria for an H-1B specialty occupation. CAR pp. 240-248. Plaintiff did not appeal the denial or move for reconsideration. It could have done so by filing a Form I-290B Notice of Appeal or Motion within

thirty-three days of the decision. CAR p. 248. On October 14, 2020, Plaintiff filed its Complaint challenging the USCIS decision. Doc. 1.

Upon learning of the Complaint, USCIS voluntarily reopened the administrative proceeding to correct an apparent discrepancy in the record concerning the size of Plaintiff's business organization and to afford it another opportunity to buttress its claim that the position at issue qualified as a specialty occupation. On December 9, 2020, USCIS reopened the adjudication, CAR p. 258, and issued a second Request For Evidence ("Second RFE") seeking additional evidence that the "Management Analyst" position qualified as a "specialty occupation." The Second RFE made specific reference to each specialty occupation criterion and sought additional evidence on the nature and complexity of the position's duties. CAR pp. 259-269. The Second RFE also sought clarification of an ambiguity in the initial Petition about the number of employees and payment of the applicable fee for Plaintiff's Form I-129 Petition. CAR p. 268.

On March 5, 2021, Plaintiff responded to the Second RFE, correcting its initial claims about the number of workers and paying the fee for the Form I-129 Petition. Otherwise it submitted essentially the same evidence it had previously provided, supplemented by letters from counsel and Jamil Nassar, President of Xpress Group Inc. CAR pp. 270-389. On April 15, 2021, USCIS again denied the Form I-129 Petition for Nonimmigrant Worker finding that Plaintiff failed to meet its burden to demonstrate that a Management Analyst satisfied the criteria for a H-1B specialty occupation. CAR pp. 1-16.

Since Plaintiff did not appeal or move for reconsideration, USCIS's April 15, 2021 denial constitutes the final agency action. Plaintiff filed its First Amended Complaint on June 3, 2021, seeking a reversal of the USCIS decision and an order directing the agency to grant the H1–B

Petition pursuant to section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Doc. 12. The parties have filed cross-Motions for Summary Judgment.

### III. STANDARD OF REVIEW

The Administrative Procedure Act ("APA") provides for judicial review of final agency actions. See 5 U.S.C. §§ 702, 704. Under the APA,

> [t]he reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... [or] (E) unsupported by substantial evidence in a case ... reviewed on the record of an agency hearing provided by statute.

Id. § 706(2)(A), (E).

An action is arbitrary or capricious if "the agency relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Hughes River Watershed Conservancy v. Johnson, 165 F.3d 283, 287–88 (4th Cir. 1999) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). This standard is "highly deferential, with the presumption in favor of finding the agency action valid." G.D USA, Inc. v. United States Citizenship & Immigr. Servs., 531 F. Supp. 3d 966, 980 (E.D. Va. 2021) (quoting Ohio Valley Envtl. Coalition v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009)).

"The standard of review is narrow and a court is not to substitute its judgment for that of the agency. The reviewing court does not resolve factual questions, but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id. (citations omitted). To survive a challenge, the agency must articulate "a satisfactory explanation" for its action, "including a rational connection between the facts found

and the choice made." Dep't of Com. v. New York, ––– U.S. –––, 139 S. Ct. 2551, 2569, 204 L.Ed.2d 978 (2019)(citation omitted); see also, Nat'l Audubon Soc'y v. United States Army Corps of Eng'rs, 991 F.3rd 577, 583 (4th Cir. 2021)("In other words, so long as the agency provides an explanation of its decision that includes a rational connection between the facts found and the choice made, its decision should be sustained.").

The agency's factual findings and conclusions are reviewed under the substantial evidence standard. The Court may only overturn final agency decisions that are "unsupported by substantial evidence in a case ... reviewed on the record." 5 U.S.C. § 706(2)(E). The Supreme Court has "defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" which is "something less than the weight of the evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 619–20 (1966) (citation omitted). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Id. at 620; see also, Gonahasa v. INS, 181 F.3d 538, 541 (4th Cir. 1999).

Courts routinely resolve APA challenges on summary judgment motions. As the Eastern District of North Carolina explained,

> The Rule 56(a) standard applies differently in an APA claim. A court conducting judicial review under the APA does not resolve factual questions, but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. Thus, in an APA claim, summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."

Nieves v. McHugh, 111 F. Supp. 3d 667, 679–80 (E.D.N.C. 2015) (internal citations omitted).

### IV.    DISCUSSION OF CLAIM

Plaintiff argues that USCIS abused its discretion in denying the H–1B visa Petition. Specifically, Plaintiff contends that USCIS erroneously interpreted regulatory requirements, ignored evidence, and misapplied clear legal standards when it determined that Plaintiff had failed to sustain its burden of proving that the position of "Management Analyst," qualifies as a "specialty occupation."

### A. Applicable Statutory and Regulatory Framework

The H-1B visa program permits employers to temporarily hire foreign citizens to work in a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i). The Immigration and Nationality Act ("INA") defines a "specialty occupation" as an occupation requiring:

> (A) theoretical and practical application of a body of highly specialized knowledge, and
> (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

8 U.S.C. § 1184(i)(1)(A)-(B). USCIS has also enacted agency regulations fleshing out the H-1B requirements. 8 C.F.R. § 214.2(h)(4)(ii) further defines specialty occupation as:

> an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii). USCIS has further developed a set of four criteria to determine whether an occupation qualifies as a "specialty occupation," one of which must be satisfied:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A).

After an employer elects to participate in the H-1B program and locates a foreign worker it intends to hire, it must complete a two-step process. First, the employer must submit to the Department of Labor ("DOL") a Labor Condition Application ("LCA") identifying the purported specialty occupation position and verifying that the employer will comply with program requirements, including paying the worker the mandated wage. See 8 U.S.C. § 1182(n)(1).

Second, once the DOL certifies the LCA, the employer must submit the LCA to USCIS with a Form 1-129 Petition requesting that the foreign worker, commonly described as the petition's "beneficiary", be classified as an H-1B nonimmigrant worker. See 8 C.F.R. § 214.2(h)(4)(iii)(C).[1]

In this Petition, the employer has the burden of establishing, among other things, that the position offered to the beneficiary is in fact a "specialty occupation." See 8 U.S.C. § 1361 ("Whenever any person makes application for a visa or any other document required for entry, ... the burden of proof shall be upon such person to establish that he is eligible to receive such visa."); Royal Siam Corp. v. Chertoff, 484 F.3d 139, 145 (1st Cir. 2007); CareMax v. Holder, 40 F. Supp. 3d 1182, 1885 (N.D. Cal. 2014); CAR p.2. To carry this burden, the employer must show, through the Form I-129 and any supporting evidence, that the position offered satisfies at least one of the four prerequisites under 8 C.F.R. § 214.2(h)(4)(iii)(A).

---

[1] USCIS also determines whether the beneficiary for whom H-1B nonimmigrant status is sought qualifies to perform services in a specialty occupation. The qualification criteria are set forth in 8 C.F.R. §214.2(h)(4)(iii)(C). The beneficiary's qualifications were not at issue in USCIS denial of Plaintiff's Form I-129. CAR p. 4.

B. **Application of the Regulatory Criteria**

In support of its H-1B Petition, Plaintiff included a detailed job description, information about the company, the duties of a Management Analyst, and Nassar's qualifications. Plaintiff submitted that the minimum education required for the Management Analyst is a bachelor's degree in business administration in accordance with 8 C.F.R. § 214.2(h)(4)(iii)(A)(1). Plaintiff also included a copy of the DOL's U.S. Bureau of Labor Statistics Occupational Outlook Handbook ("OOH") description for Management Analyst, a copy of DOL's O*Net entry for management analysts, DOL's disclosure data for labor certifications for various organizations hiring management analysts, and copies of job postings from other companies. CAR p. 3.

Plaintiff argues that USCIS's denial of its H-1B Petition is arbitrary and capricious because it failed to recognize the DOL's analysis of a Management Analyst in the OOH. Plaintiff relies on statements within the OOH from the DOL that the Management Analyst position requires a bachelor's degree or in the alternative a master's degree in business administrations for an entry level position. Plaintiff contends that the statements by the DOL alone are sufficient to establish that the position is a specialty occupation. It argues that any additional requirement that Plaintiff do more to prove that a bachelor's degree in business administration is sufficient to qualify as a specialty occupation is arbitrary and capricious.

The DOL's OOH entry describing the educational background for the occupation of Management Analyst reads:

> A bachelor's degree is the typical entry-level requirement for management analysts. However, some employers prefer to hire candidates who have a master's degree in business administration (MBA).
> Management analysts address a range of topics, and many fields of study provide a suitable educational background. Common fields of study include business, economics, finance, marketing, and psychology.

CAR p. 5.  Under 8 C.F.R.§ 214.2(h)(4)(i)(B)(1), a petitioner must obtain certification from the DOL "that it has filed a labor condition application in the occupational specialty in which the alien(s) will be employed." But DOL certification of a LCA is not determinative as to whether the position is in fact a "specialty occupation." 8 C.F.R. § 214.2(h)(4)(i)(B)(2).  Rather, the specialty occupation determination is made by USCIS in accordance with section 214(i)(1) of the INA:

> Certification by the Department of Labor of a labor condition application in an occupational classification does not constitute a determination by that agency that the occupation in question is a specialty occupation. The director [of USCIS] shall determine if the application involves a specialty occupation as defined in section 214(i)(1) of the Act. The director shall also determine whether the particular alien for whom H-1B classification is sought qualifies to perform services in the specialty occupation as prescribed in section 214(i)(2) of the Act.

8 C.F.R. § 214.2(h)(4)(i)(B)(2).

While 8 C.F.R. § 214.2(h)(4)(iii)(A)(1) does not contain the language "specific specialty," the Court finds that USCIS did not abuse its discretion in reading this regulation together with 8 C.F.R. § 214(h)(4)(ii), which defines a "specialty occupation" as one that "requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent." Courts have found this to be "well-settled in the case law and USCIS's reasonable interpretations of the regulatory framework." See, e.g., Chung Song Ja Corp v. U.S. Citizenship and Immigration Services, 96 F. Supp. 3d 1191, 1197 (W.D. Wash. 2015); CareMax, 40 F. Supp. 3d at 1187.  The regulatory criteria for a specialty occupation "must be read in the context of the statutory definition, so USCIS consistently interprets the term 'degree' in the regulations to mean not just any bachelor's or higher degree, but one in a specific specialty that is directly related to the proffered position." Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs., No. 18-2015 (RC), 2018 WL 6047413, at *24 (D.D.C. November 19, 2018) (internal citation omitted).

The USCIS explained in its Decision that "[t]o be consistent with section 214(i)(1) of the Act, U.S. Citizenship and Immigration Services (USCIS) interprets the term 'degree' set forth in the criteria at 8 CFR, section 214.2(h)(4)(iii)(A) to mean not just any baccalaureate or higher degree, but one in a specific specialty that is directly related to the offered position." CAR p. 4.

This latter definition is identical to that provided by the INA itself. See 8 U.S.C. § 1184(i)(1). The requirement of a specialized degree or its equivalent is also in keeping with the intent of the H–1B visa program, which "allows an employer to reach outside of the U.S. to fill a temporary position because of a special need, presumably one that cannot be easily fulfilled within the U.S." Caremax, 40 F.Supp.3d at 1187. As USCIS explained in its Decision,

> [W]hether a bachelor's degree is a typical requirement for a management analyst is not at issue. The requirement of a bachelor's degree, alone, does not establish that a position qualifies as a specialty occupation. In order to qualify as a specialty occupation, a position must require the attainment of a bachelor's degree, or higher, in the *specific specialty* (or its equivalent) as the minimum for entry into the occupation in the United States (emphasis added). As such, while the position of management analyst may require an individual to possess a bachelor's degree, the OOH does not indicate that these positions require the attainment of a bachelor's degree in a specific specialty.

CAR p. 6.

Allowing an occupation to qualify with only a general bachelor's degree would run contrary to congressional intent to provide a visa program for specialized as opposed to merely educated workers. See Royal Siam Corp., 484 F.3d at 147 (providing that employer should not be able to "ensure the granting of a specialty occupation visa petition by the simple expedient of creating a generic (and essentially artificial) degree requirement").

Here, the CAR demonstrates together with the OOH entry, that USCIS reviewed all relevant evidence submitted by Plaintiff in support of its Petition under the first regulatory criterion including: DOL's O*NET occupational description for management analysts; Selected Statistics

from the Office of Foreign Labor Certification; a U.S. News and World Report overview of Management Analysts; an article from Owlguru.com about management analysts; information about business administration degree programs from allbusinessschools.com; and information about the business administration degree programs at the University of North Carolina and the University of Florida. CAR pp. 3-4.

Throughout the adjudication, USCIS repeatedly acknowledged that a bachelor's degree appeared to be the "typical entry-level" requirement for a Management Analyst but advised Plaintiff that attainment of a bachelor's degree alone was not sufficient to "establish that a position qualifies as a specialty occupation." CAR p. 6.

None of the evidence presented by Plaintiff identified any specialized course of study necessary for a Management Analyst. USCIS observed that a range of seemingly disparate or unrelated bachelor's degrees were suitable for entry into this position. CAR p. 5.

USCIS further noted that a bachelor's degree in business administration, which was Plaintiff's prerequisite for this position, is consistently deemed a general degree and not indicative of a specialty occupation. CAR pp. 7-8. This conclusion is consistent with longstanding and well-known agency practice. See Royal Siam, 484 F.3d at 147 ("[t]he courts and the agency consistently have stated that, although a general-purpose bachelor's degree, such as a business administration degree, may be a legitimate prerequisite for a particular position, requiring such a degree, without more, will not justify the granting of a petition for an H-1B specialty occupation visa"); see also Shanti, Inc. v. Reno, 36 F. Supp. 2d 1151, 1166 (D. Minn. 1999)(proffered position's required business administration degree is general degree requirement, and INS did not abuse discretion in denying H–1B petition); All Aboard Worldwide Couriers, Inc. v. Attorney General, 8 F. Supp. 2d 379, 381 (S.D.N.Y. 1998) (INS did not abuse discretion in determining proffered position did not

qualify as specialty occupation where it found "an absence of evidence that [the petitioner] or its competitor organizations require job candidates to have a B.A. in a specific, *specialized* area.")(emphasis in original); Jonathan D. Rosen Family Foundation, Inc. v. Baran, 1:19-cv-04301-ELR, 2020 WL 5551030, at *22 (May 26, 2020 N.D. Ga.) ("Because the OOH supports the conclusion that general-purpose degrees, such as business, would adequately prepare an individual for the fundraiser position, USCIS correctly found that Plaintiffs did not establish that a bachelor's degree in a specific specialty is normally the minimum requirement for a fundraiser.").

Contrary to Plaintiff's allegations, the Court finds that USCIS did not require that Plaintiff demonstrate "only one type of degree be accepted for a position to be specialized." See RELX, Inc. v. Baran, 397 F. Supp. 3d 41, 54 (D.D.C. 2019). Nor did the adjudication require a subspecialty. See InspectionXpert Corp. v. Cuccinelli, 1:19-cv-65, 2020 WL 1062821 (March 5, 2020 M.D.N.C.). Instead, the decision was in accord with USCIS's practice that "consistently interprets the term 'degree' in the regulations to mean not just any bachelor's or higher degree, but one in a specific specialty that is directly related to the proffered position*."* Jonathan D. Rosen Family Foundation, Inc. v. Baran, 2020 U.S. Dist. LEXIS 173849, 2020 WL 6018706, at *7 (N.D. Ga.) (quoting Stellar, 2018 U.S. Dist. LEXIS 196284, 2018 WL 6047413, at *8). "A position that requires applicants to have any bachelor's degree, or a bachelor's degree in a large subset of fields, can hardly be considered specialized." CareMax, 40 F. Supp. 3d at 1187–88. Moreover, a general bachelor's degree requirement is not a sufficient basis for an H-1B visa. Rosen, 2020 WL 6018706, at*7.

Plaintiff also argues that USCIS overlooked a portion of OOH's description entry relating to a master's degree in business administration and this oversight amounts to an arbitrary and capricious omission by the agency. Doc. No. 18, pp. 20-21. This argument is absent from any of

Plaintiff's correspondence with USCIS and outside the Administrative Record that is the sole basis for this Court's review. Nevertheless, the Court finds that USCIS observed that the OOH, along with the U.S. News and World Report and Owlguru.com articles Plaintiff submitted, showed that "some employers prefer to hire candidates who have a master's degree in business administration" and concluded that this language did not establish a specialty occupation. CAR pp. 5, 7.

Plaintiff's argument conflates the hiring preference of only "some employers," Doc. 18, p. 20, into what is "normally the minimum requirement for entry" under regulatory authority. 8 C.F.R. § 214.2(h)(4)(iii)(A)(1). Regardless of whether the decision expressly stated the obvious (that the preference of some employers is not tantamount to a normal minimum requirement for entry into the occupation), the Court finds that USCIS considered the language of the OOH in its entirety. The USCIS "'must examine' the relevant factors and data and articulate a 'rational connection' between the record and the agency's decision." AT&T, Inc. v. FCC, 886 F.3d 1236, 1245 (D.C. Cir. 2018) (quoting Motor Vehicle Mfrs., 463 U.S. at 43).

The Court finds that USCIS was not arbitrary or capricious in determining that the evidence failed to show that a bachelor's degree or higher in a specific specialty or its equivalent was the normal minimum requirement for entry into the Management Analyst position. The Court concludes that USCIS acted with due regard for DOL's important role in the H-1B process, and carefully considered all relevant DOL-sourced evidence pertaining to Management Analysts. The Court finds a rational connection between the CAR and USCIS's denial of Plaintiff's Petition and affirms the USCIS's decision.

## V. ORDER

**NOW THEREFORE IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (document #18) is **DENIED**; Defendant's Motion for Summary Judgment (document #19) is **GRANTED**; and the USCIS decision is **AFFIRMED.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

Signed: February 10, 2022

David S. Cayer
United States Magistrate Judge